IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>PEDRO GERARDO ROSAS ALVARADO, individually and dba ROSAS CARPETS,<br><br>          Defendant.<br>_____/ | No. C 09-02552 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT and TERMINATING PLAINTIFFS' MOTION TO EXPEDITE (Docket Nos. 58 & 69) |

   Plaintiffs District Council 16 Northern California Health and Welfare Trust Fund, its Joint Board of Trustees, and Doug Christopher as Trustee; District Council 16 Northern California Apprentice & Journeyman Training Trust Fund; Resilient Floor Covering Pension Fund, its Board of Trustees, and Steve Havens as Trustee; Central Coast Counties Floor Covering Industry Pension Fund; and District Council 16 of the International Union of Painters and Allied Trades move for summary judgment.  Docket No. 58.  Pro se Defendant Pedro Gerardo Rosas Alvarado opposes.  Having considered all of the parties' submissions, the Court GRANTS Plaintiffs' motion for summary judgment.

BACKGROUND

Plaintiffs, who are employee benefit plans, their trustees and the union party to the trust agreement, have brought suit under the Employee Retirement Income Security Act (ERISA), to collect from Defendant unpaid contributions, liquidated damages, interest, attorneys' fees and costs.  On July 18, 2005, Defendant signed and agreed to the terms and conditions of the Northern California Floor Covering Master Agreement.  Michele Stafford Decl., Exh. B.[1]  This agreement required Defendant to pay certain contributions to the Plaintiff Trust Funds for each hour worked by union members when Defendant employed them to do work covered by the agreement.  Plaintiffs allege that Defendant has failed to pay the contributions to the Plaintiff Trust Funds as required by the Master Agreement.  Many of the underlying facts of this case were detailed in Magistrate Judge Spero's Report and Recommendation Re Plaintiffs' Motion for Default Judgment, Docket Number 32.  It is unnecessary for the Court to repeat those facts here.

After the Court adopted Judge Spero's Report and Recommendation and granted Plaintiffs' Motion for Default Judgment, Docket No. 36, a Writ of Execution was issued on January

---

[1] The Master Agreement establishes the Northern California Health and Welfare Trust Fund, and expressly incorporates the Northern California Health and Welfare Fund Trust Agreement. Stafford Decl., Exh. B at 16 & 18.  The Master Agreement further states that each signatory employer acknowledges receipt of the Trust Agreement.  Id. at 18.

2

19, 2010, in the amount of the judgment, $37,625.70.[2]  Plaintiffs received a check for $21,000.97 from Defendant's bank.  On May 4, 2010, the Court issued an Amended Writ of Execution for the balance of the judgment, but Plaintiffs were unable to collect because Defendant no longer had an account at the bank.  Less than a month later, Defendant moved to set aside the judgment, which the Court granted.  Docket Nos. 43 & 50.  Defendant has since answered Plaintiffs' complaint and Plaintiffs now move for summary judgment.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all

---

[2] The judgment amount consisted of $26,840.16 in unpaid contributions, $2,684.06 in liquidated damages, $2,006.98 in interest; $2,480.00 in audit fees, $3,033.00 in attorneys' fees, and $581.50 in costs.  Docket No. 32.

3

reasonable inferences in favor of the party against whom summary judgment is sought.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

DISCUSSION

I. Liability

Plaintiffs seek $26,840.16 in unpaid contributions found due on an audit of Defendant's payroll records for the period of January 1, 2005 through August 31, 2008.  Defendant first argues that he was no longer required to pay contributions as of March 1, 2006, when he was "fired" from the union for failure to pay his membership dues.  Apparently, Defendant had been a union member as well as a signatory to the Master Agreement as a some-time employer of other union members.  It is not Defendant's status as a union member that governs his obligation to pay contributions; it is his status as an employer and signatory of the Master Agreement.

Defendant appears to argue that he was induced to discontinue making contributions based on misrepresentations by David Figueroa and possibly Gene Hopkins, who purportedly told him that he was no

4

longer a union member and the agreement was no longer in place. Defendant does not assert that he was specifically told that he no longer needed to pay contributions as an employer under the Master Agreement.

By making these allegations, Defendant seems to argue the defenses of fraud, waiver and estoppel. Figueroa and Hopkins are union representatives, not trust fund officials. But even if these were valid contract defenses against the Plaintiff Trust Funds as third party beneficiaries of Defendant's agreement with the union, Ninth Circuit decisions have held that traditional contract defenses in union trust fund recovery actions are limited. See Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769 (9th Cir. 1986) (limiting the defense of fraudulent inducement); Southern Cal. Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1362 (9th Cir. 1984) (holding a fraudulent inducement defense non-cognizable); Audit Services, Inc. v. Rolfson, 641 F.2d 757 (9th Cir. 1981) (questioning the applicability of the defense of laches, but finding insufficient evidence to sustain the defense).

In Rozay's Transfer, an employer argued that it was induced to sign a collective bargaining agreement by a union representative who falsely stated that it would not be obliged to pay pension contributions during the interim months after the prior agreement expired and before the new agreement was executed. The trust charged with managing and administering the fund sued

5

the employer to collect the unpaid contributions.  The court explained that a

> third-party beneficiary's rights are generally subject to any contract defense which the promisor could assert against the promisee if the promisee were suing on the contract. . . [but] [f]or reasons of public policy, traditional contract law does not apply with full force in actions brought under the [ERISA] to collect delinquent trust fund contributions. . . In recognition of the fact that millions of workers depend upon employee benefit trust funds for their retirement security, Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly.

Id. at 773.  Thus, the court held that a defense may not be maintained by asserting fraud, whereby a party assented to something he or she would otherwise not have agreed to, but held permissible a defense based on "fraud in execution," where a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms."  Id. at 774.

   Here Defendant does not argue that he was misled about the nature of the Master Agreement he signed in July, 2005, or even that was fraudulently induced by union representatives to sign the Master Agreement.  Rather, he contends that, after March, 2006, union representatives misled him to believe that he was no longer bound by the Master Agreement.  Under Rozay's Transfer and other Ninth Circuit decisions, Defendant does not support a defense of

6

fraud, waiver or estoppel that is cognizable in an ERISA collections action.

In his motion to set aside the default judgment and in his first Answer to Plaintiffs' Complaint, Defendant argued that he was not required to pay contributions pursuant to the Master Agreement for work done on a floor installation project for a company named Kyn/Hill, because he was not an employer on the project. Although Defendant does not raise this argument in his opposition to Plaintiffs' motion for summary judgment, the Court addresses it. Plaintiffs contend that, when Kyn/Hill hired Defendant to install flooring for Tri-Valley Orthopedic Specialists, Inc., Defendant employed several workers to help him complete the job, but he subsequently failed to make contributions to the benefit plans based on the hours the installers worked. Although Defendant has argued that he was a Kyn/Hill supervisor, not an employer, the contract between Kyn/Kill and Defendant states that "skilled installation craftsmen, hereinafter 'Installers,' will be employed" by Defendant. Alvarado Decl. in Support of Mot. to Set Aside Default Judgment, Ex. A. There is no evidence that Defendant was not working as an employer/subcontractor on the Kyn/Hill project. Furthermore, the audit reveals substantial hours worked by Defendant's employees, for which Defendant failed to make contributions, before and after the Kyn/Hill project.

7

Accordingly, summary judgment as to Defendant's liability is warranted.

## II. Remedy

The ERISA authorizes the following recoveries in any action by a fiduciary on behalf of a plan to collect unpaid contributions,

    (A)   the unpaid contributions,

    (B)   interest on the unpaid contributions,

    (C)   an amount equal to the greater of--

        (i)   interest on the unpaid contributions,

        or

        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E)   such other legal or equitable relief as the court deems appropriate.

28 U.S.C. § 1132(g)(2).  Interest on unpaid contributions is determined by the benefit plan, or, if none is provided, under 26 U.S.C. § 6621.  Id.

Plaintiffs seek summary judgment for recovery of the following amounts:

```
Unpaid Contributions         $26,840.16
Liquidated Damages            $5,368.03
Interest                      $3,396.79
Audit Fees                    $2,486.00
```

8

```
Attorneys' Fees            $13,560.00
Costs                       $1,806.10

Prior Payment Collected   -$21,000.97
TOTAL                      $32,456.11
```

Plaintiffs also seek an additional, unquantified amount of interest accrued from the day after they filed their motion for summary judgment, January 14, 2011, through the date of satisfaction of the unpaid contributions.

A. Unpaid Contributions, Liquidated Damages, Interest and Audit Fees

The sum sought by Plaintiffs for unpaid contributions, $26,840.16, reflects the total indicated in the audit. The Monthly Transmittal sheets Defendant attached to his answer, which indicate contributions made prior to the period of delinquency, do not create a factual dispute as to the contributions owed. Plaintiffs' liquidated damages amount is supported by the Trust Agreement, which states that liquidated damages in the amount of twenty percent of the delinquent contributions may be awarded in the event litigation is required to collect on unpaid contributions. The $5,368.03 amount is twenty percent of Defendant's unpaid contributions. The Trust Agreement provides that an employer who fails to comply with recordkeeping requirements shall reimburse the Trust for the cost of an audit in the event the audit reveals that full and prompt payment of contributions is not being made. The audit revealed Defendant's

9

underpayments, and the amount of audit fees, $2,486.00, is supported by the record.

Under the Trust Agreement, delinquent contributions accrue interest from the due date until paid. Stafford Decl., Exh. C at 4. According to Plaintiffs, the quantified amount of interest they seek reflects the amount of interest stated in the audit report, plus the interest accrued during the period after the audit report was prepared through the date Plaintiffs moved for summary judgment, January 1, 2009 through January 13, 2011. In addition, Plaintiffs seek an unquantified amount of interest for the accrual period after January 13, 2011. The audit applied to the unpaid contributions a compounded monthly interest rate of eight percent, a rate set by the District Council 16 Northern California Health and Welfare Trust Fund--Floor Coverings, as permitted by the Trust Agreement, resulting in $2,006.98 in interest. Plaintiffs then applied a five percent per annum interest rate for the period after the audit report through January 13, 2011, calculating $1,389.81 in interest. Although Plaintiffs have produced evidence of the proper interest rate pursuant to the Trust Agreement for the period after the audit, Plaintiffs do not explain to which amount they have applied the interest rate, and there appears to be a discrepancy in the record. The Court awards $2,006.98 for interest accrued prior to the date of the audit, as indicated in the audit report. Plaintiffs may submit further documentation to support their

10

calculation of the interest amount for the period following the audit through January 13, 2011, and to establish how interest will be calculated for the period after they moved for summary judgment. The Court will amend its judgment if warranted.

B. Attorneys' Fees and Costs

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "This section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotation marks omitted). This is in line with ERISA's broad remedial purpose "to protect employee rights and to secure effective access to federal courts." Id.

In determining whether special circumstances exist warranting the denial of attorneys' fees, a court may consider: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the

11

parties' positions. Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980). No one of these Hummell factors is decisive, and some may not be pertinent in a given case. Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984). Rather, they reflect a balancing, and not all must weigh in favor of a fee award. McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). The Court finds that there are no special circumstances in this case that warrant denying attorneys' fees. The award of attorneys' fees is justified by the lack of merit to Defendant's position, and the need to deter unreasonable resistance to enforcement efforts, and to ensure broad employer compliance to protect plan beneficiaries.

Reasonable attorneys' fees are determined by first calculating the "lodestar." Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the lodestar figure represents a reasonable fee. Jordan, 815 F.2d at 1262. However, the court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

Determining a reasonable hourly rate is a critical inquiry. Jordan, 815 F.2d at 1262 (citing Blum v. Stenson, 465 U.S. 886,

12

895 n.11 (1984)).  In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained.  See Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir. 1988).  These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards.  Morales, 96 F.3d at 363-64.  The reasonable rate inquiry should also be informed by reference to the prevailing market rates in the forum district.  Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Plaintiffs assert that they have incurred attorneys' fees in the amount of $13,560.00 based on work completed prosecuting this action.  Specifically, the fees are based on the following rates and hours: (1) 21.6 hours by Michele R. Stafford, a shareholder in the firm, when her rate was $185 per hour, and 8.5 hours when her rate was $200 per hour; (2) 1.8 hours by Muriel B. Kaplan, a shareholder in the firm, when her rate was $195 per hour; (3) 4.4 hours by Blake E. Williams, an associate attorney of the firm, when his rate was $180 per hour, and .1 hour when his rate was $195 per hour; (4) .4 hours by Pamela Soto, a paralegal formerly at the firm, when her rate was $110 per hour; (5) 36.6 hours by Qui Lu, a paralegal at the firm, when her rate was $110 per hour, and 22.5 hours when her rate was $115 per hour; and (6) .4 hours by Vanessa de Fabrega, a paralegal at the firm, when

13

her rate was $110 per hour. Based on rates approved in similar cases and counsel's skill and experience, the Court finds that the lodestars proposed are reasonable. The number of hours expended are reasonable because, after Plaintiffs were granted default judgment, Defendant successfully moved to set aside the judgment and began actively defending against the claims. The litigation continued for another seven months and Plaintiffs moved for summary judgment. Accordingly, the Court finds $13,560 a reasonable award of attorneys' fees in this case.

In addition, Plaintiffs seek reimbursement for $1,806.10 in costs. In ERISA actions non-taxable costs are included as part of an award of attorneys' fees if it is "'the prevailing practice in a given community' for lawyers to bill those costs separately from their hourly rates." See Trustees. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1258 (9th Cir. 2006) (quoting Missouri v. Jenkins, 491 U.S. 274, 287 (1989)). Title 28 U.S.C. § 1920 and Local Rule 54-3 support reimbursement for the taxable costs identified by Plaintiffs.

## CONCLUSION

The Court grants Plaintiffs' motion for summary judgment against Defendant. Docket No. 58. Plaintiffs are awarded $26,840.15 in unpaid contributions, $5,368.03 in liquidated damages, $2,486.00 in audit fees, $2,006.98 in interest, $13,560.00 in attorneys' fees, and $1,806.10 in costs. Plaintiffs may submit further documentation to support their calculation of

14

the interest for the period following the audit.  The award is reduced by $21,000.97, the amount already paid by Defendant to Plaintiffs.  Thus, the total award is $31,066.30.  This order moots Plaintiffs' motion to expedite a ruling on their summary judgment motion, and therefore the motion is terminated.  Docket No. 69.  The clerk shall enter judgment and tax costs and attorneys' fees in Plaintiffs' favor, and close the case.

    IT IS SO ORDERED.

Dated: 4/11/2011

_____
CLAUDIA WILKEN
United States District Judge